FILED
United States Court of Appeals
Tenth Circuit

December 5, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ERICK OROZCO,

Defendant - Appellant.

No. 08-6087

(W.D. Oklahoma)

(D.C. Nos. 5:07-CV-01407-R and
5:04-CR-00179-R)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**

Before **BRISCOE**, **MURPHY**, and **HARTZ**, Circuit Judges.

Eric Orozco was convicted of conspiracy to commit money laundering after a jury trial in the United States District Court for the Western District of Oklahoma. After an unsuccessful appeal, *United States v. Orozco*, 240 F. App'x 287 (10th Cir. 2007), Mr. Orozco filed a motion under 28 U.S.C. § 2255 for habeas relief, alleging that his trial counsel was constitutionally ineffective. The district court denied the motion and Mr. Orozco, appearing pro se, seeks a certificate of appealability (COA) from us to challenge that ruling. *See* 28 U.S.C. § 2253(c)(1)(B) (requiring COA to pursue appeal of denial of § 2255 motion). Because Mr. Orozco has not "made a substantial showing of the denial of a constitutional right," *id*. § 2253(c)(2), we deny his application for a COA and dismiss the appeal.

## I.     BACKGROUND

The indictment against Mr. Orozco arose from his alleged involvement in a conspiracy to distribute methamphetamine and launder the proceeds.  The initial law-enforcement investigation targeted Dennis Gonzalez, who was purportedly importing methamphetamine into Oklahoma City for distribution.  Mr. Orozco was implicated when a search of one of the residences associated with Gonzalez's operation revealed a ledger of accounts in which Mr. Orozco's name appeared as someone to whom monies were owed.  Investigators later learned that Gonzalez and his confederates had wired funds to Mr. Orozco on 26 separate occasions. The funds, which totaled $33,764.99, were wired under fictitious names, and Mr. Orozco supplied fictitious addresses and telephone numbers when receiving them.

Mr. Orozco was indicted on one count of conspiracy to distribute controlled substances, *see* 21 U.S.C. § 846, and one count of conspiracy to commit money laundering, *see* 18 U.S.C. § 1956.  At trial Mr. Orozco testified that he knew nothing of the methamphetamine-distribution operation and that the money wired to him was payment for a debt Gonzalez owed his deceased brother.  The jury failed to reach a unanimous verdict on the conspiracy-to-distribute count, but found Mr. Orozco guilty of conspiracy to commit money laundering.

## II.    DISCUSSION

Mr. Orozco contends that his trial counsel was ineffective, thereby depriving him of the Sixth Amendment right to effective assistance of counsel.  In order to prevail on this claim, Mr. Orozco must demonstrate both that his "counsel's representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).  Our review of trial counsel's performance "must be highly deferential" and we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (internal quotation marks omitted).  Finally, we may consider either the performance or prejudice prong of the *Strickland* analysis first and, of course, need not consider both prongs if one is dispositive.  *See Boltz v. Mullin*, 415 F.3d 1215, 1222 (10th Cir. 2005).

Mr. Orozco's submissions, liberally construed, point to four putative deficiencies in his trial counsel's performance:  (1) failure to interview and call potential exculpating witnesses—in particular, Dennis Gonzalez; (2) failure to impeach government witness Jennifer Lujan on the basis of her habitual

methamphetamine use[1]; (3) failure to conduct diligent research of possible affirmative defenses; and (4) failure to provide the "right advice" during plea bargaining. Aplt. Br. at 10. We consider each claimed deficiency in turn.

## A. Failure to Interview or Call Witnesses

Mr. Orozco makes a vague and general claim that his counsel was ineffective in not interviewing potential witnesses and calling them to testify. Absent a description of what the witnesses would have testified, however, he cannot establish the prejudice prong of the *Strickland* test. Because the sole potential testimony that he points to is testimony by Dennis Gonzalez, we need address only the ineffectiveness of his counsel in failing to call Gonzalez.

Mr. Orozco has presented evidence that Gonzalez was prepared to testify that the money wired to Mr. Orozco was to pay a debt to Mr. Orozco's deceased brother and had nothing to do with drug trafficking. Nevertheless, Mr. Orozco's counsel was not ineffective in not calling Gonzalez as a witness.

As an initial matter, the record indicates that Mr. Orozco assented in open court to his counsel's decision not to call Gonzalez. We would, of course, be disinclined to deem counsel's performance deficient if it comported with Mr. Orozco's instructions. *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)

---

[1]Mr. Orozco also seems to contend that Jason Lujan should have been impeached on the basis of his drug use. But Jason Lujan did not testify at Mr. Orozco's trial.

(defendant cannot claim that counsel was deficient for following his instructions not to file an appeal).

But even if counsel had acted unilaterally, Mr. Orozco has not overcome the presumption that counsel was carrying out a "sound trial strategy." *Strickland*, 466 U.S. at 689. At the time of Mr. Orozco's trial, Gonzalez was appealing convictions arising from the same methamphetamine conspiracy that Mr. Orozco was alleged to be involved in. Most significantly, Gonzalez had been convicted of several money-laundering counts involving wire transfers to Mr. Orozco. The prosecutor informed defense counsel that if Gonzalez testified that the wire transfers repaid an innocuous debt, then the government would impeach him with the money-laundering convictions. To be sure, Gonzalez could have invoked his right against self incrimination during the cross-examination; indeed, he had expressed his intent to do so. But as defense counsel noted at trial, Gonzalez's repeated refusal to answer incriminating questions would likely "taint" the exculpating testimony he could provide on direct, R. Vol. 14 at 391, leading jurors to draw damaging inferences against Mr. Orozco; and the court might have decided to strike all of Gonzalez's testimony in any event.

In short, there were sound tactical reasons not to call Gonzalez as a witness. Mr. Orozco has not overcome the strong presumption that his counsel performed reasonably. *See Strickland*, 466 U.S. at 689.

**B.     Failure to Impeach Jennifer Lujan**

At Mr. Orozco's trial, Jennifer Lujan testified that she had wired drug-related funds to Mr. Orozco and, at the behest of Gonzalez, called Mr. Orozco to complain about a shipment of subpar methamphetamine.  Mr. Orozco argues that his counsel was constitutionally ineffective because he neglected to impeach Lujan on the basis of her methamphetamine use.  This argument lacks merit.  It is well-established that "decisions regarding how to best cross-examine witnesses presumptively arise from sound trial strategy." *DeLozier v. Sirmons*, 531 F.3d 1306, 1326 (10th Cir. 2008) (internal quotation marks omitted).  In this case, defense counsel's questioning focused on exposing Lujan's limited experience with Mr. Orozco.  Although counsel did not also question Lujan about her drug use, Lujan had not testified to any fact requiring acute perception and, in any event, she had admitted during her direct testimony that she had used methamphetamine.  Pressing Lujan's drug use thus had limited impeachment value and we cannot say that the cross-examination fell outside the presumptive zone of reasonableness.  *See id.*

**C.     Failure to Research Affirmative Defenses**

Mr. Orozco contends that his counsel performed deficiently by not diligently researching affirmative defenses.  But Mr. Orozco does not identify a defense that his counsel might have discovered with more diligent research.

Mr. Orozco has thus not shown the requisite prejudice to sustain a claim of ineffective assistance. *See Strickland*, 466 U.S. at 694.

### D.    Improper Advice on Plea Bargain

Mr. Orozco's final argument is that his counsel did not give him the "right advice" during plea bargaining. Aplt. Br. at 10. The problem with this argument is that Mr. Orozco has not specified any information not relayed by counsel that may have convinced him to plead guilty. Thus, even if we presume that counsel provided deficient advice, Mr. Orozco cannot show prejudice. *See United States v. Carter*, 130 F.3d 1432, 1442 (10th Cir. 1997) (to show prejudice in this context, a defendant must demonstrate that "but for incompetent counsel [he] would have accepted the plea offer and pleaded guilty").

## III.    CONCLUSION

Mr. Orozco has not made a "substantial showing" that his constitutional right to effective assistance of counsel was violated. 28 U.S.C. § 2253(c)(2). We therefore DENY his application for a COA and DISMISS this appeal. We GRANT Mr. Orozco's motion to proceed in forma pauperis.

                              ENTERED FOR THE COURT


                              Harris L Hartz
                              Circuit Judge